IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| AARON DANIELS and ROBERT SZWAJA Individually, and on Behalf of All Others Similarly Situated,<br><br>                Plaintiffs,<br><br>v.<br><br>PREMIUM CAPITAL FUNDING, LLC D/B/A TOP DOT MORTGAGE, DAVID BROWN, FRANK FIORE and DANIEL MANSI,<br><br>                Defendants. | Case No. CV 08-4736 (LDW/ARL)<br><br>ECF Case |

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION UNDER FED. R. CIV. P. 23

Erik H. Langeland
ERIK H. LANGELAND, P.C.
500 Fifth Avenue, Suite 1610
New York, NY 10110
(212) 354-6270
(212) 898-9086 (Fax)
elangeland@langelandlaw.com

James B. Zouras
Ryan F. Stephan
STEPHAN ZOURAS, LLP
205 North Michigan Avenue, Suite 2560
Chicago, IL 60601
(312) 233-1550
(312) 233-1560 (Fax)
jzouras@stephanzouras.com

Attorneys for Plaintiffs

## TABLE OF CONTENTS

                                                                                             Page

TABLE OF AUTHORITIES..................................................................ii

I. INTRODUCTION...........................................................................1

II. STATEMENT OF FACTS................................................................2

III. LEGAL STANDARD.....................................................................3

IV. ARGUMENT................................................................................4

       A.    Numerosity..........................................................................4

       B.    Commonality.......................................................................5

       C.    Typicality............................................................................7

       D.    Adequacy of Representation...................................................8

       E.    Predominance......................................................................9

       F.    Superiority.........................................................................10

V. CONCLUSION.............................................................................11

# TABLE OF AUTHORITIES

**CASES**         **PAGE(S)**

*Amchem Products, Inc. v. Windsor,*
    521 U.S. 591, 614 (1997)..................................................................................4

*Casale et al v. Provident Bank,*
    Case No. 04-2009 *(JLL) (D.N.J.)*......................................................................9

*Cedeno v. Home Mortgage Desk Corp., d/b/a Home Desk, et al,*
    08 CV 1168 (E.D.N.Y.)....................................................................................8

*Chabrier v. Wilmington Finance, Inc.,*
    2006 WL 3742774 (E.D.P.A. Dec. 13, 2006)..................................................8

*Consolidated Rail Corp. v. Town of Hyde Park,*
    47 F.3d 473, 483 (2nd Cir. 1995)..................................................................4, 8

*Farmer et al v. Direct Sat USA,*
    08 CV 3962 (N.D.Ill., Gottschall, J.)................................................................8

*Fletcher v. ZLB Behring LLC,*
    2006 U.S. Dist. LEXIS 94838, at *24 (N.D.Ill. Oct. 23, 2006).........................4

*Franco v. Ideal Mortgage Bankers, Ltd, d/b/a Lend America, Inc.,*
    07 CV 3956 (E.D.N.Y.)....................................................................................8

*German v. Federal Home Loan Mortgage Corp.,*
    885 F.Supp. 537, 553 (S.D.N.Y.1995)............................................................6

*Gonzalez v. Nicholas Zito Racing Stable, Inc.,*
    2008 WL 941643, at *5 (E.D.N.Y. Mar. 31, 2008).............................5, 7, 9-10

*Guzman v. VLM, Inc.,*
    2008 WL 597186, at *4 (E.D.N.Y. Mar. 2, 2008)..................................3, 5, 10

*Huebner v. Graham C-Stores,*
    No. 06 CH 09695 (Cook County, Ill., Maki, J).................................................8

*Iglesias-Mendoza v. La Belle Farm, Inc.,*
    239 F.R.D. 363, 370 (S.D.N.Y. 2007)....................................................4-6, 9-10

*In re Prudential Securities Inc. Ltd. Partnerships Litigation,*
    163 F.R.D. 200, 207-08 (S.D.N.Y. 1995).........................................................7

*In re Sony SXRD Rear Projection Television Class Action Litigation,*
    2008 WL 1956267, at \*13 (S.D.N.Y. May 1, 2008)..................................................9

*Jenkins v. Mercantile Mortgage Co.,*
    231 F.Supp.2d 737, 744 (N.D.Ill. 2002).................................................................4

*Mascol v. E & L Transp., Inc.,*
    2005 WL 1541045, at \*7 (E.D.N.Y. June 29, 2005)............................................10

*Perez et. al. v. RadioShack Corporation,*
    02 CV 7884 (N.D.Ill., Pallmeyer, J.).......................................................................8

*Robidoux v. Celani,*
    987 F.2d 931, 936 (2nd Cir. 1993)..........................................................................7

**STATUTES, CODES & RULES**

Fed. R. Civ. P. 23....................................................................................1, 3-5, 8-10

New York Labor Article 6................................................................................1, 5-6

New York Labor Article 19..............................................................................1, 5-6

New York C.R.R. §§142-2.1 *et seq.*..........................................................................1

New York Labor Law §195(4).....................................................................................5

# I. INTRODUCTION

Plaintiffs move to certify this case as a class action under Rule 23[1] with the following class definition:

> "All individuals who were employed or are currently employed by one or more of the Defendants in the state of New York as inside sales loan officers or other similarly titled positions at any time during the relevant statute of limitations period."

Plaintiffs also move this Court to approve notice to the class of the pending action and to appoint Plaintiffs' counsel to serve as class counsel under Rule 23(g).

As a matter of company-wide policy since at least November 2003, Defendants engaged in a regular pattern and practice of depriving their New York loan officers of minimum wages and overtime pay. Because no exemption applies to these inside-sales people, Defendants' policy violates the New York Wage and Hour Law, the New York Labor Articles 6 and 19, and the New York Codes Rules and Regulations §§142-2.1 *et. seq.* (hereinafter referred to as the "New York Labor Articles"). Defendants imposed their unlawful and common scheme on their loan officers through common policies and practices including: 1) their commission-only compensation plan; 2) their directives to loan officers to work more than forty hours per week to close more sales; and, 3) their failure to maintain time records. This meant that loan officers worked long hours (that were not recorded by the Defendants in violation of the New York Labor Articles) to sell more of Defendants' loans without any guaranteed minimum wage or overtime pay for all time worked in excess of 40 hours per week. As such, this is a classic case for certification under Rule 23.

---

[1] Plaintiffs and Defendants have agreed to conditionally certify Plaintiffs' claims under the Fair Labor Standards Act ("FLSA") on behalf of loan officers employed in New York. (D.E. 53).

1

## II. STATEMENT OF FACTS

Defendants employed the named Plaintiffs and hundreds of other loan officers in the state of New York. *See,* Exhibits A through Q. More than 80 of Defendants' loan officers have already filed opt-in consent forms to vindicate their rights under the FLSA. Loan officers' primary job duty was the same—to sell home loans. *See,* Exhibit A; Exhibits B through Q at ¶4-5. Defendants provided their loan officers with leads generated by their marketing campaigns. After receiving a lead, Plaintiffs were required to call prospective clients, collect and input client information into Defendants' database, offer one of Defendants' loan programs and sell the loan. *See,* Exhibit A, Exhibits B through Q at ¶5.

Defendants uniformly administered and enforced their sales policies to all their loan officers through their training programs, weekly meetings, supervision, sales production goals and quotas and corporate directives. *See,* Exhibit A; Exhibits B through O at ¶¶4, 10; Exhibit P at ¶9; Exhibit Q at ¶¶4, 9. Their practices with respect to inside loan officer duties, pay plans and timekeeping were the same. *Id.*

Defendants implemented their uniform policies and practices to increase efficiency, promote standardization and sell more loans. To ensure that their loan officers were selling home loans Defendants: 1) trained their loan officers how to sell loans using Defendants' sales techniques; 2) taught their loan officers that selling loans was their primary duty; 3) provided their loan officers with a uniform set of directives that each loan officer was required to follow when selling home loans; 4) mandated that their loan officers satisfy daily, weekly and monthly production goals and quotas; and, 5) required

2

loan officers to work evenings, early mornings and weekends to sell loans. *See,* Exhibit A; Exhibits B through O at ¶¶4-7, 10; Exhibit P, Q at ¶¶4-7, 9.

Defendants had a similar compensation plan for all their loan officers – they were paid on a commission-only basis. This meant that loan officers were not paid anything if they did not make a sale. It also meant loan officers were not paid time and a half for hours worked over 40 per week. Through this compensation plan, Defendants enticed their loan officers to work longer hours to close sales and earn commissions while at the same time avoiding: 1) minimum wage payments when their loan officers were unsuccessful; and, 2) overtime pay when their loan officers worked more than 40 hours per week. This pay plan allowed Defendants to require their loan officers to work evening, early morning and weekend hours without incurring additional payroll expenses. *See,* Exhibit A; Exhibits B through O at ¶¶7-9; Exhibits P, Q at ¶¶6-9. Faced with the prospect of not being paid anything unless they made a sale—along with the coercive effect of Defendants' time requirements and production goals and quotas—loan officers regularly worked in excess of forty hours per week without any overtime pay. *See,* Exhibit A; Exhibits B through O at ¶¶7-9; Exhibits P, Q at ¶¶6-9.

### III. LEGAL STANDARD

"One or more members of a class may sue . . . as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims of the representative parties are typical of the claims of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *Guzman v. VLM, Inc.*, 2008 WL 597186, at *4 (E.D.N.Y. Mar. 2, 2008). Plaintiffs seeking to certify a

class must also show that the putative class meets one of the conditions set forth in Fed. R. Civ. P. 23(b). *See Id.* Rule 23(b)(3) allows a class action for monetary damages where common questions of law or fact predominate over any questions involving individual members and a class action is superior to other methods of adjudication. *See, Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

## IV. ARGUMENT

### A. Numerosity

This class is so numerous that joinder is impracticable. A class of forty (40) generally satisfies Rule 23(a)(1). *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2nd Cir. 1995); *Iglesias-Mendoza v. La Belle Farm, Inc.* 239 F.R.D. 363, 370 (S.D.N.Y. 2007) (citation omitted); *Fletcher v. ZLB Behring LLC*, 2006 U.S. Dist. LEXIS 94838, at *24 (N.D.Ill. Oct. 23, 2006) (citing cases). In determining numerosity, district courts may rely on reasonable inferences and common sense assumptions. *Id.*; *Jenkins v. Mercantile Mortgage Co.*, 231 F.Supp.2d 737, 744 (N.D.Ill. 2002). Here, the class is described as:

> "All individuals who were employed or are currently employed by one or more of the Defendants in the state of New York as inside sales loan officers or other similarly titled positions at any time during the relevant statute of limitations period."

Named Plaintiffs Daniels and Szwaja as well as 12 other loan officers all declare that they worked with over 40 other loan officers who were subjected to Defendants' common scheme. *See,* Exhibit A; Exhibits B through Q at ¶9 and 10. Indeed, more than 80 loan officers have affirmatively joined the FLSA collective action in this matter to date. Moreover, Defendants state they are headquartered in New York and have over 525 employees nationwide. *See,* Exhibit A. This case was conditionally certified under the

4

Fair Labor Standards Act on April 17, 2009, with notice being sent to more than 700 inside sales loan officers employed by Defendants during the last three years alone. The exact number of putative class members will be determined from Defendants' payroll records and clearly satisfies the numerosity standard.

## B. **Commonality**

Rule 23(a)(2) requires at least one common question of law. *Guzman*, 2008 WL 597186, at *7; *Gonzalez v. Nicholas Zito Racing Stable, Inc.,* 2008 WL 941643, at *5 (E.D.N.Y. Mar. 31, 2008); *Iglesias-Mendoza,* 239 F.R.D. at 370. Here, many common issues of law exist including whether Defendants' commission-only pay plan violates the New York Labor Articles, whether Defendants' misclassified their loan officers as exempt from the minimum wage and overtime requirements, and whether Defendants maintained accurate time records as required by Section 195(4) of the New York Labor Law. (Complaint ¶¶ 31, 54 & 58-59.) Plaintiffs have also alleged common issues of fact as to:

    a. Whether Defendants conducted an analysis of class members' pay plan before failing to pay them minimum wage or overtime compensation;

    b. Whether Defendants conducted an analysis of class members' actual duties and tasks before failing to pay them minimum wage or overtime compensation;

    c. Whether Defendants failed to pay their loan officers a guaranteed salary;

    d. Whether Defendants failed to pay their loan officers the requisite minimum wage;

    e. Whether Plaintiffs were expected, required or permitted to work in excess of 40 hours per week;

    f. Whether Plaintiffs regularly worked in excess of 40 hours per week;

5

    g. Whether Defendants kept accurate records of actual loan officer time worked;

    h. Whether Defendants paid its loan officers a premium for all time worked over 40 hours per week;

    i. Whether Defendants' practices violated the overtime provisions of the New York Labor Articles;

    j. Whether Defendants' failure to pay minimum wage or overtime has been willful, and whether it has been undertaken in good faith; and,

    k. Whether Plaintiffs and members of the classes have suffered damages and what the proper measure of those damages is.

*Id.*

The Federal District Court for the Southern District of New York has held that when a complaint raises common questions regarding such things as payroll practices, overtime policy or the applicability of the York Labor Law, commonality has been established:

> The complaint raises a number of questions of law and fact common to all members of the class, including, inter alia, factual questions regarding defendants' payroll practices, overtime policy, and compliance with minimum wage requirements, as well as legal questions concerning the applicability of the New York Labor Law and any exemptions. Once a common question is identified, "differences among the questions raised by individual members [of the class] will not defeat commonality." *German v. Federal Home Loan Mortgage Corp.*, 885 F.Supp. 537, 553 (S.D.N.Y. 1995). Moreover, it is clear that all of the proposed class members would rely on the same allegedly wrongful conduct of the defendants and muster the same legal arguments in support of their New York Labor Law claims.

*Iglesias-Mendoza*, 239 F.R.D. at 371. Here, Plaintiffs' complaint raises precisely the same common issues regarding Defendants' payroll practices, overtime policy, compliance with minimum wage and overtime requirements and the applicability of the New York Labor Law. Plaintiffs will rely on the same wrongful conduct of the

Defendants and will raise the same legal arguments in support of their New York Labor Law claims. Plaintiffs have, therefore met this Court's commonality standard.

### C. <u>Typicality</u>

The named class representatives, Aaron Daniels and Robert Szwaja ("Named Plaintiffs") typify the putative class. Rule 23(a)(3) requires class representatives' claims to have the same essential characteristics as the claims of the class. Under Rule 23(a)(3), the typicality requirement primarily directs the district court to focus on whether the class members have the same essential characteristics and will make similar arguments to establish the defendant's liability. *Gonzalez*, 2008 WL 941643, at *6; *Robidoux v. Celani*, 987 F.2d 931, 936 (2nd Cir. 1993). When it is alleged that the same unlawful conduct was directed toward named Plaintiffs and the class they seek to represent, the typicality requirement is usually met. *Id.* at 936-37. The typicality requirement is liberally construed. *In re Prudential Securities Inc. Ltd. Partnerships Litigation*, 163 F.R.D. 200, 207-08 (S.D.N.Y. 1995). Like the class at large, named Plaintiffs were employed by Defendants as loan officers, share the same characteristics of class members' claims and were victimized by same alleged unlawful conduct. Similar to the claims asserted for the class, the named Plaintiffs: 1) had the same primary duty—to sell home loans; 2) were subjected to Defendants' commission only pay plan; 3) routinely worked over 40 hours in a week; 4) were trained how to sell loans using Defendants' sales techniques; 5) were provided with a uniform set of directives they were required to follow when selling home loans; and, 6) were required to satisfy daily, weekly and monthly production goals and quotas. *See,* Exhibits B through O at ¶¶4-7, 10; Exhibits P, Q at ¶¶4-7, 9. Defendants failed to pay all named Plaintiffs and other class members

the requisite minimum wage for all time worked and overtime for more than 40 hours worked per week. Since the essential characteristics of the named Plaintiffs' claims—namely, whether the commission only, inside sales loan officers were deprived of minimum wage and overtime—are identical to those of the class, the Plaintiffs have satisfied the typicality requirement.

### D. Adequacy of Representation

Rule 23(a)(4) requires class representatives to understand the basic facts of a claim and be able to protect the interests of the class. *Consolidated Rail Corp.*, 47 F.3d at 483-84. Here, the named Plaintiffs have signed and submitted declarations attesting to pertinent facts of this case. These declarations also indicate their willingness to participate as class representatives. There are no conflicts of interest between the named Plaintiffs and other members of the class.

Rule 23(a)(4) also requires that counsel be capable of adequately representing the interests of the putative class. Their attorneys, Stephan Zouras, LLP and Erik H. Langeland, P.C. are highly experienced and recognized advocates in wage and hour litigation nationwide, and their principal attorneys have been designated as class counsel in other class actions in federal and state courts throughout the United States, including numerous cases on behalf of loan officers. *See e.g., Franco v. Ideal Mortgage Bankers, Ltd, d/b/a Lend America, Inc.*, 07 CV 3956 (E.D.N.Y.); *Cedeno v. Home Mortgage Desk Corp., d/b/a Home Desk, et al*, 08 CV 1168 (E.D.N.Y.); *Chabrier v. Wilmington Finance, Inc.*, 2006 WL 3742774 (E.D.P.A. Dec. 13, 2006); *Farmer et al v. Direct Sat USA*, 08 CV 3962 (N.D.Ill., Gottschall, J.), *Perez et al v. RadioShack Corporation*, 02 CV 7884 (N.D.Ill., Pallmeyer, J.), *Huebner v. Graham C-Stores*, No. 06 CH 09695 (Cook County,

8

Ill., Maki, J), and *Casale et al v. Provident Bank,* Case No. 04-2009 *(JLL) (D.N.J.).* Stephen Zouras, LLP and Erik H. Langeland, P.C. have the ability and the resources to manage this lawsuit.

### E. **Predominance**

To satisfy the predominance requirement, a plaintiff must demonstrate that common issues of law or facts predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3); *Gonzalez,* 2008 WL 941643, at *7; *Iglesias-Mendoza,* 239 F.R.D. at 372-73; *In re Sony SXRD Rear Projection Television Class Action Litigation,* 2008 WL 1956267, at *13 (S.D.N.Y. May 1, 2008). When determining if Plaintiffs have met the predominance requirement, district courts focus on questions of liability, not damages. *Iglesias-Mendoza,* 239 F.R.D. at 372-73. Predominance, under Rule 23(b)(3), may be established even though there are factual differences within a class as long as there is an essential factual link between putative class members. *Id.* at 373. The inquiry focuses on the elements of proof required to establish liability rather than damages. *Id.*

Here, all class members were employed by Defendants as loan officers or other similarly titled positions. All were required to comply with Defendants' policies to sell residential loans and work unpaid regular and overtime hours. The heart of each Plaintiff's claims is that they worked under the same 100% commission compensation policy that did not include any minimum wage components or premium for hours worked over 40 per week. They will rely on generalized proof, such as the Defendants' uniform policies and absence of accurate time records, to prove their claims. As stated by this Court, "[t]hese are about the most perfect questions for class treatment." *Iglesias-*

*Mendoza,* 239 F.R.D. at 373; *Gonzalez,* 2008 WL 941643, at *6 (finding predominance on questions of whether Defendants failed to pay their stable workers, including grooms and hot walkers, overtime wages and whether this alleged failure violated New York Labor Law); *Mascol v. E & L Transp., Inc.,* 2005 WL 1541045, at *7 (E.D.N.Y. June 29, 2005) (finding predominance where common question in class action was whether defendants failed to pay their drivers overtime wages and whether this alleged failure violated NYS Labor Law). Clearly, common questions of fact predominate over any individual questions.

## F. Superiority

In determining whether the class form represents a superior mode of adjudication, the court should consider, inter alia, "the interest of the members of the class in individually controlling the prosecution or defense of separate actions" and "the difficulties likely to be encountered in the management of a class action." Rule 23(b)(3). The same factors relevant to the determination regarding predominance are relevant to the assessment of whether a class action is superior to other methods. Fed. R. Civ. P. 23(b)(3)(A)-(D); *Guzman v. VLM, Inc.,* 2008 WL 597186, at *8 (E.D.N.Y. Mar. 2, 2008).

Here, the superiority requirement is easily satisfied. Proceeding as a class action is by far a superior means of adjudicating Plaintiffs' claims than individual actions because of the relatively small dollar value of the individual claims, which would make proceeding on an individual basis difficult, if not impossible. The putative class members, moreover, are entitled to injunctive relief to prevent Defendants' continuing violations of New York wage laws. This case is the only litigation pending concerning this controversy and concentrating it in this Court is desirable since Defendants are

10

headquartered here and Plaintiffs' claims arose in the state of New York. Managing this class action will not pose substantial difficulties because Plaintiffs will prove the bulk of their claims through class-wide evidence. Finally, a class action will be more efficient than numerous individual suits concerning the same alleged practices and bases for liability.

## VI. CONCLUSION

Plaintiffs request this Court to grant their Motion for Class Certification for the reasons listed above.

Dated: May 1, 2009

Respectfully Submitted,

Erik H. Langeland (EL-7512)
ERIK H. LANGELAND, P.C.
500 Fifth Avenue, Suite 1610
New York, NY 10110
(212) 354-6270
(212) 898-9086 *f*
elangeland@langelandlaw.com

Ryan F. Stephan
James B. Zouras
STEPHAN ZOURAS, LLP
205 North Michigan Avenue
Suite 2560
Chicago, IL 60601
(312) 233-1550
(312) 233-1560 *f*
jzouras@stephanzouras.com